# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Michael Disch, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DISMISSING PLAINTIFF'S** |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| Colby Braun, Warden, | ) | Case No. 1:15-cv-087 |
| | ) | |
| Defendant. | ) | |

Plaintiff Michael Disch ("Disch") initiated the above-entitled action on June 30, 2015, with the submission of an application to proceed *in forma pauperis* and what was styled as a habeas petition.[1] He subsequently elected to convert this action into a prisoner civil rights action. His complaint is now before the court for an initial screening as mandated by 28 U.S.C. § 1915A. At the time he initiated this action, he was incarcerated at the North Dakota State Penitentiary ("NDSP"). He has since been transferred to the United State Penitentiary in Terre Haute, Indiana.

## I.   BACKGROUND

Disch claims that, while at the NDSP, he was twice restricted to quarters and later placed in administrative segregation without hearings beforehand and that his ability to recreate while in administrative segregation was restricted. Specifically he asserts:

> 5.   This petitioner was sanctioned to 3 days R.T.Q. "restriction to quarters". For violation of disciplinary code 107 "Loaning or borrowing property of another. I was given 3 days of R.T.Q. for violation of code 103 "False testimony to a staff member". I was given 3 days of R.T.Q. for violation of code 110 "Attendance in an unauthorized area". About 1 week latter I was given 3 more days of R.T.Q. for violation of code 106 "Alteration of state property" for covering my

---

[1] On July , 2015, Disch filed notice of his consent to the undersigned's exercise of jurisdiction over this matter. (Docket No. 4).

1

cell vent.

First I was not given the required 24 hour notice of charges agenst me. Pursuant to the ruling in the case of Wolff v. Mcdonnell 418 US 539 (1974) The court held that "for the minimum requirements of procedural due-process to be satisfied in the state disciplinary hearings, prisoners must be provided with advanced written notice to inform them of the charges and enable them to marshal the facts and prepare a defense, and at least no less then 24 hours should be allowed to the inmate to prepare for the appearance at the disciplinary hearing." This was not done in this petitioners case, nor is done at all at this prison for any inmate. When I was sanctioned to the R.T.Q. I was not given the required 24 hour notice before I was to have the disciplinary hearing. All that was done was I was called into a room with a staff member and the report was read to me and I was given the sanctions.
Myself or other inmates are not allowed to present documentary evidence in the hearing. Myself or other inmates are not allowed to call witnesses, nor was myself or other inmates given a written statement by the fact finders as to the evidence relied on and the reason for any disciplinary action. This is a violation of my due-process right under the United States Constitution.

6. When I or any other Inmate is given a sanction for a level 1 or 2 incident report pursuant to the inmate handbook page 12 and 15 is states on page 12 "Level 1 sanctions may not be appealed". On page 15 of the inmate handbook "Level 2 sanctions may not be appealed". When I was given the sanctions I was not able to file an appeal of the sanctions given to me. The fourteenth amendment states that a state may not deprive any person of life, liberty, or property, without due-process of law. The courts have ruled many times than an inmate does not shed all federal constitutional rights at the prison gate. The courts have also ruled that any time that an inmate is given a punitive disciplinary saction is given to the an inmate that inmate has the constitutional right to file an appeal in that case. The North department of corrections takes away the inmates federal protected rights by violating the United States constitution. Inmates get no due-process rights at the hearings in this prison.

7. After an inmate has done his disciplinary sanctions the inmate can be placed in administrative segregation. In the handbook for segregation on page 4 "An inmate can be referred to A.S. by the wardon or any staff member". Next the inmate has a hearing (the inmate can not be at this hearing). The A.S. committee will determine if placement is warranted. when I was put in A.S. I was not allowed to be at the hearing I was not allowed to present documentary evidence to call witnesses or to be heard on why I should not be placed in A.S. My due process rights were violated.

Pursuant to the inmate handbook I do not have the right to appeal the placement of myself in A.S. The way this is set up a staff member for any reason (he just might not like you) and you get placed in A.S. and the inmate can not appeal the placement

2

> This prison acts like the due-process amendment does not apply to them the amount of times that they violate inmates rights.
>
> 8.     Inmates that are on R.T.Q. or that are placed in (per hearing detention status) get no out of cell exercise. Inmates on R.T.Q. only get to go to eat meals and shower, This prison says that this counts as out of cell recreation. the prison must feed and let us take a shower any way, Inmates as my self when I was placed in administrative segregation (per-hearing states) myself and other inmates do not get any out of cell exercise there is no set time limit on how long a inmate can be with no out of cell exercise. The 28-C.F.R. section 540 states "After an inmate is in segregation for 24 hours he is to get his 5 hours of out of cell recreation each week. This prison does not provide this to inmates. See the case of Delancy v. Detella, 256 F.3d 679 (7 th cir. 2001) held that "Exercise is one of the basic human needs and that prisons officials must provide for under the eighth amendment." Also see the case of Pierce v. county of orange 526 F3d 1190 (9 th cir 2008). stating that "prison officials must provide at least 5 hours of out of cell exercise each week myself nor other inmates on R.T.Q. or per hearing detention status get his federal protected constitutional right.

(Docket No. 2) (errors in original).

## II.     <u>STANDARDS GOVERNING INITIAL REVIEW</u>

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burden imposed by prisoner suits that are too often frivolous and without merit. <u>Jones v. Bock</u>, 549 U.S. 199, 203-04 (2007); <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee requires courts to conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. <u>Id.</u>

In enacting the PLRA, Congress did not impose a heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 does not impose any such requirement. <u>Jones</u>, 549 U.S. at 203-04. Consequently, to state a cognizable claim, the complaint need only meet

3

the minimal requirements of Fed. R. Civ. P. 8(a)(2) that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007). In addition, when a prisoner is proceeding *pro se*, the court must construe the complaint liberally and hold it to a less stringent standard than would be required of an attorney. Id. at 94.

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, more is required than simply expressing a desire for relief and declaring an entitlement to it. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atlantic, 550 U.S. at 570). A complaint fails to meet this minimal pleading standard if it contains nothing more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft, 556 U.S. at 678 (2009) (quoting Bell Atlantic, 550 U.S. at 555, 557).

To state a cognizable claim for violation of federal civil rights under 42 U.S.C. § 1983, the plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). The pleading must also allege a sufficient causal link between the alleged violation and the basis upon which the particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability. Ashcroft, 556 U.S. at 676-77; Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999).

**III.    DISCUSSION**

### A. Eleventh Amendment Immunity

State officials can be sued under § 1983 in their official capacities, in their individual capacities, or both. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Eighth Circuit precedent requires that a plaintiff desiring to bring an individual capacity claim against a state official must "expressly and unambiguously" state that the official is being sued in his individual capacity. Id. A pleading that does not include an affirmative statement that individual capacity claims are included must be construed as including only official capacity claims. Id.

Nowhere in his complaint does Disch affirmatively indicate that he intends to sue defendant in his individual capacity. Consequently, the court must construe the complaint as bringing claims against defendant in his official capacity only.

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Congress may abrogate the States' sovereign immunity by expressing its unequivocal intention to do so and acting pursuant to a valid grant of constitutional authority, or a State may waive its sovereign immunity by consenting to suit in federal court. See Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). However, Congress did not abrogate the States' sovereign immunity in enacting § 1983, Quern v. Jordan, 440 U.S. 332, 340-45 (1979), and North Dakota has not waived its immunity. Moore v. Hoeven, No. 3:08-CV-50, 2009 WL 3064742 , at * 3 (D.N.D. Sept. 22, 2009) (citing N.D.C.C. § 32-12.2-10).

North Dakota's immunity from § 1983 liability extends to claims brought against the State's agencies or entities and to claims for money damages brought against state employees in their

official capacities.[2] See, e.g., Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 169 (1985). Defendant is a state employee. Thus, to the extend Disch's claim for monetary damages against defendant is barred. In any event, as discussed below, Disch's complaint is devoid of any cognizable claims.[3]

**B. Disch's claims**

**1. Denial of Due Process**

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To state a claim for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which protection is sought. Under Sandin v. Conner, segregative confinement in prison implicates a liberty interest protected by the Due Process Clause of the United States Constitution only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995).

In the wake of Sandin, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin." Portley-El v. Brill, 288 F.3d at 1065 (affirming a district court's dismissal of prisoner's due process claims on initial review for failure to meet the Sandin threshold); see also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("In [the context of disciplinary detention], there is no federal constitutional liberty

---

[2] Eleventh Amendment immunity does not extend to § 1983 claims against state officials sued in their official capacities when a claimant seeks for prospective, injunctive relief. See, e.g., Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Ex parte Young, 209 U.S. 123 (1908).

[3] Even if Disch had affirmatively indicated that he was suing defendant in his individual capacity, his complaint would still be subject to dismissal for failure to state a cognizable claim. As discussed above, the personal involvement of a defendant is a prerequisite to liability under § 1983; a defendant cannot be held personally liable under § 1983 on the basis of *respondeat superior*. See Ashcroft, 556 U.S. at 676-77; Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999). Here, Disch's pleadings are devoid of any allegation that defendant had any personal involvement in the decision to restrict him to quarters or place him in administrative segregation.

6

interest in having state officers follow state law or prison officials follow prison regulations. Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined . . . . In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life. We do not consider the procedures used to confine the inmate in segregation" (internal citations and quotations omitted)); (Frietas v. Ault, 109 F.3d 1335, 1337 (8th Cir. 1997) (concluding that an inmate's endurance of 10 days of administrative segregation and thirty days of "on-call" status did meet the Sandin threshold).

Here, Disch alleges that he was restricted to quarters for combined six days over a two-week period and confined to administrative segregation at an unidentified date for an unspecified amount of time. Absent more, such sanctions cannot be considered "atypical and significant" deprivations that create a liberty interest under Sandin. See Phillips, 320 F.3d at 847; Portley-El, 288 F.3d at 1063 (8th Cir. 2002); see also Platt v. Brockenborough, 476 F.Supp. 2d 467, 470 (E.D.Pa. 2007) ("Placement in administrative segregation for a total of eight months, without more, also does not constitute an atypical and significant hardship."); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (concluding there was protected liberty interest where inmate was held in disciplinary detention for 15 days and in administrative segregation for 120 days). Consequently, the undersigned concludes that Disch has failed to state a claim for a violation of due process.

### 2. Cruel and Unusual Punishment

Disch next complains that all NDSP inmates, himself included, have been denied out-of-cell exercise when restricted to quarters and while held in administrative segregation. In so doing, he

makes a vague reference to his rights under the Eighth Amendment.[4]

Failure to provide an opportunity for adequate exercise can amount to cruel and unusual punishment under the Eighth Amendment, particularly if a prisoner's muscles are allowed to atrophy or the prisoner's health is threatened. See Delaney v. DeTella, 256 F.3d 679, 683-684 (7th Cir. 2001); Wishon v. Gambon, 978 F.2d 446, 448-449 (8th Cir. 1992); see also Platt, 476 F.Supp.2d at 472 ("Lack of exercise may amount to a constitutional violation where it poses a significant threat to an inmate's physical and mental well-being."). To prevail on such a claim, an inmate must demonstrate that prison officials were deliberately indifferent to his exercise needs. See Wishon v. Gammon, 978 F.2d 446, 448 (8th Cir. 1992) (citing Wilson v. Seiter, 501 U.S. 294 (1991)). "In considering an alleged deprivation of adequate exercise, courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." Id.

Notably, Dischon is not claiming that he suffered any injury or decline in health on account of limited out-of-cell exercise time. Moreover, he has not provided the court with a clear indication as to how long he was allegedly deprived of the opportunity to recreate outside of his cell. See Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); Leonard v. Norris, 797 F.2d 683, 685 (8th Cir.1986) (concluding that a 15-day restrict on out-of-cell exercise for inmates in punitive confinement was

---

[4] To the extent that Disch is asserting a claim on behalf of other inmates regarding the lack of privacy in the law library, he has no standing. "Prisoners may only challenge violations of their own rights and have no standing to assert the rights of other prisoners." Langbehn v. Henderson, No. 1:06CV3019, 2007 WL 30602 at * 2 (N.D. Ga. Jan. 2, 2007); see also Singleton v. Wulff, 428 U.S. 106, 116 (1976) (holding one may not claim standing to vindicate the constitutional rights of others); Adams v. James, 784 F.2d 1077, 1080 (11th Cir.1986) ("In a non-class action context a prisoner has no standing to litigate another prisoner's claim...."); Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir.1981) ("Courts have held consistently that an inmate does not have standing to sue on behalf of his fellow prisoners.").

not tantamount to cruel and unusual punishment). Rather, he has asserted in a rather conclusory fashion that restrictions on his ability to recreate are unconstitutional. Absent more, such an allegation does not constitute the basis for cognizable Eighth Amendment claim.

## III. <u>CONCLUSION</u>

For the reasons set forth above, the court concludes that Disch has not asserted cognizable constitutional claims. Consequently, the above-entitled action shall be **DISMISSED** without prejudice pursuant to § 1915A.

**IT IS SO ORDERED.**

Dated this 25th day of August, 2015.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
